The next case for argument is 161474 IPCOM v. HTC. This case is 161474 IPCOM v. HTC. I'm Mitch Stockwell, I represent IPCOM. I want to start with the arrangement claim element and focus particularly on the Board's decision at page A18. That was after the Board had talked about the claims that had that arrangement element. 1, 18, 30, and 34 have them, although the Board focused on claim 1 and some of its dependents. After summarizing the algorithm we had proposed, the three-step algorithm, the Board said, we're not persuaded by Pat and Ernie that any of the purported method steps must be imported into claim 1. Therefore, we need not consider whether or not the combination of Anderson and McDonald discloses or suggests those steps. And it then held that the examiner erred in refusing to adopt the rejection. Now, we see several errors here. The first is, this Court had already held in the HTC IPCOM District Court appeal that this was a means plus function element. It did require a structural algorithm. There is no such algorithm set forth in the Board's decision, and there is no comparison of that algorithm to Anderson and McDonald. There's not even a comparison, if you look closely at the decision, to citing where in Anderson and McDonald this reactivating is occurring, at least in this section talking about claims 1 through 8. So, we submit that at least a remand is required here. The Board didn't construe a means plus function term. It needs to do so. It needs to apply that construed term to the prior art. But we would contend that an outright reversal is actually appropriate, first because we think our claim construction is right. We identified three steps to the algorithm, the first of which was that if you look at Figure 5. But just to stay on your point about wanting an outright reversal, we don't have, under your understanding of the Board's decision, any actual comparison of the structures or so-called structures in the prior art references up against your claim construction and corresponding algorithm from your spec. So, that would be a fact-finding. How could you ask us to do a fact-finding at this point? Well, Your Honor, if you look at our brief at pagesóour opening brief at pages 37 through 42, we pointed out that if the court adopted our construction of a three-step algorithm, we explained here's why none of the disclosures in Anderson and McDonald disclose that those algorithmic steps. And we argued that extensively. HTC, in their response brief, did not point to any evidence that would suggest that Anderson or McDonald actually disclosed all three of those algorithmic steps. But let's say the point they're making is if we assume that a comparison has to be made, they are recommending that it be made by the Board in the first instance, and it wouldn't be proper for us as an appellate court to go make that fact-finding in the first instance. Well, Your Honor, I do know that there are several decisions this court has made in which when it finds a plain error in claim construction, it looks at the record. It will reverse outright. Pride Mobility versus Mobile, there the claim required a mounting plate that wasó I think it was perpendicular to the board, so that could reach parallel. The record was such that you corrected the claim construction. You looked at the record and said, we're just going to reverse. There's no need for remand here. And we contend the record is such here because HTC has not identified any evidence in Anderson or McDonald. And we have pointed to evidence, recall, that the examiner had twice allowed these claims and been reversed by the board. And I would commend the court to look at A14755-60. In five pages of analysis, the examiner goes through, explains why he's adopting the algorithm, and then analyzes the references and combinations, and particularly the McDonald combination, and rejects the notion that the algorithmic steps are there. And it's a very detailed analysis. That is uncontested in the record. So we have record support for the notion that these references simply do not teach the algorithm. I don't know what you mean by it's uncontested. I mean, didn't HTC make an argument to the board that, in fact, this algorithm is, in fact, taught by prior references? At least McDonald's. Or maybe not specifically taught, but at least rendered obvious in light of the teachings of McDonald's. HTC argued to the board there was a two-step algorithm. HTC's two-step algorithm was. But are you saying that they waived any argument that McDonald teaches your three-step? They waived it? They never argued it? I don't know that I would go that far, Your Honor, because I believe their principal argument was there was a two-step algorithm. They had backup factual arguments about whether McDonald and Anderson taught all three of the steps we had identified in the algorithm. What I'm saying is, if you look at the examiner's analysis, going through that record and analyzing what HTC argued, there is a very clear, very detailed analysis by the examiner indicating why that's simply wrong. And on this record, it's sufficient for reversal. That's why we contend reversal suffices here. Well, how do we know what the correct algorithm in the spec is for this means on the paper? I think that comes down, Your Honor, to, in particular, the linking issue. If you look at our claim— Your argument is that the board rejected your three-step algorithm, that they didn't implicitly accept a two-step algorithm that was advertised by your— or argued by your colleague, so that the board didn't say what algorithm it was looking to. Nonetheless, the board said, in essence, there's a mystery algorithm out there, and the mystery algorithm is the prior art reads on it. So you said, well, we can't—we can't review that. So why should this court decide exactly what the mystery algorithm is? Well, Your Honor, I would agree with everything you said, except I'm not quite sure they agreed there was an algorithm there. But for purposes of your question, assuming that— Well, they said there was—you said that there was a three-step algorithm, and there was an algorithm that required the first step. And they said to the board, no, no, no, there's another algorithm that doesn't require the first step. So they're pointing to an algorithm, okay? Accepting your question, again— And then the second, they said, your second step, guess what? Even if you're right that there is a disclosure of the second step of the three-step algorithm, guess what? There's another disclosure of another algorithm that doesn't require the second step. And then they said, guess what? Your third step, yeah, it's disclosed in the spec, but guess what? There's another algorithm that doesn't disclose it. But they never tied up the three algorithms that we're talking about, right? And maybe you think you know what those three steps are, but I sure don't. And how do I know whether the prior art reads on what I call the mystery algorithm? So I think your original question is why not remand to let the board find the algorithm in the first instance? First, that is purely a legal issue of claim construction. Second, this proceeding has been going on for seven years. We have not been getting special dispatch. This court will routinely decide those sorts of claim constructions on appeal. Third, when we argued for our algorithm, we submitted the testimony of an expert, Dr. Vijay Mattesetti. That was uncontested. No one contested his testimony about how the three steps of the algorithm linked up to the claim elements. HTC's expert accepted arguendo Dr. Mattesetti's testimony on that. So I think you have a very clear record here in which you can adopt our three-stepped algorithm. But the other side said, well, then there's another algorithm running around in the spec, right? So the debate isn't so much whether you're correct that there's three steps somewhere in the spec that correspond to the three steps you're proposing. The real debate is whether there's an alternative also disclosed in the spec. I would agree with that, Your Honor, and there's two aspects to that debate. First, there's the aspect you just raised, the two-step algorithm that HTC proposes. And second, there's the point that you made, Your Honor, where the board seemed to go through each one of our steps and say, oh, but there's something else in the spec here, and maybe that implies there's another embodiment or another algorithm. With respect to the first point, that HTC raised the two-step algorithm, I want to refer the court back to the HTC IPCOM decision. In that decision, at page 1278, you were reciting the district court's construction of this term, where the district court found the arrangement was a processor and transceiver, quote, programmed to formulate and send messages to reactivate the link, comma, if the handover is unsuccessful. And then at page 1280, because in that appeal HTC had tried at the last minute to argue that there was no support for an algorithm, you characterized that dispute. You said, while IPCOM maintained the 830 patent contains such a qualifying algorithm, the district court never analyzed whether the claim was true. There's thus no finding in the record specifically addressing whether the structure actually needed for the type of functional claim at issue can be found. Now, I raise that because the algorithm that the district court stated, programmed to formulate and send messages to reactivate the link if the handover is unsuccessful, is substantively very similar to what HTC identifies at page 32 of their brief. The cell phone determines that a handover attempt is unsuccessful. That correlates to the district court's if the handover is unsuccessful. And then two, it sends a simple message to the base station to which it was originally linked to reactivate the link. That correlates to program to formulate and send messages to reactivate the link. So this court has already looked at the essence of that which HTC was proposing and saying, that doesn't look like an algorithm to us in the context of the HTC IPCOM decision. That then leaves the three points that the patent office made with respect to our algorithm. We had identified as the first step. I was wondering, do you think it's possible that the patent board wrote such a funny decision because it doesn't really think there's an algorithm disclosed in the specification? That these sort of functional steps of, you know, this component sends a message to that component. That component sends a message to this component. That those sorts of circulating messages don't represent really an algorithm as this court has conceived of the term algorithm when it comes to these computer implemented means plus function limitations. And you go back and look at the spec for corresponding structure, i.e. an algorithm. Your Honor, I would say no. First off, 112, such 112 issues were never raised below, either by any party or the board. And secondly, when I look at the board's decisions, it seems to be suggesting, well, we're not, it seems to be skeptical about the notion that the arrangement is even a means plus function term. Or it could be skeptical that there's even an algorithm. I don't read that because what I see is they say. Doesn't say so-called algorithm? Yeah, they say even if the so-called algorithm is responding to what we. Your proposed algorithm, right. But when I talk about the 112.6 issue, whether it's a means plus function, they say even if this is a means plus function term. So I see some skepticism over that aspect, not the sufficiency of the algorithm. But with respect to their critique of our messages, it's our contention that all of the critiques as to what our algorithm is, it boils down to they're looking at portions of the specification and saying, well, that's another embodiment and this is another embodiment and that's another embodiment. When you read it in context, those are not embodiments. The algorithm is plainly set out with respect to figure five. That's the only figure that's disclosed where, in fact, the handover is unsuccessful and a link is successfully reactivated. And that requires the three steps of the algorithm we propose. I know we've given you a lot of questions, but we want to reserve the remainder of your rebuttal. Thank you, Your Honor. I would like to just rest on our briefs with respect to the issue of claims 31 through 37. If that comes up, I would like a little rebuttal. Thank you. Good morning, Your Honors. My name is Michael Loveland on behalf of HTC. Your Honors, the board did construe the means plus function limitation, and we said it did it implicitly because it didn't say here is the algorithm. But when you review the board's decision, it did provide all that's needed for construction. All that's needed in a means plus function limitation is to construe what the function is and then find the corresponding structure in the specification. Why don't you walk us through the opinion and show us where they picked out algorithmic structure from the spec. Absolutely. And said that's what it is and then told us that the copyright reads on it. Absolutely, Your Honor. The way that the board did this is by critiquing the algorithmic structure that IBCOM pointed out. And then it responded and said, well, wait. There's other algorithmic structure that says the opposite or that provides another example. And it did that twice. And by doing that, it provided the corresponding structure. I thought they did it on all three. Well, for all three, it said it wasn't required. But it gave two sites that I'm going to read out at appendix page 16 and 17. The first one was in connection with the rejection message that they were pointing to that IBCOM said there had to be a rejection message coming. And in response, the board said that that wasn't required. For example, the specification discloses an algorithm structure in which the mobile station was unable to register at another base station. In this case, due to a rejection. But in some cases, this is because no other base station is receiving. And it's citing to the patent specification at column 7, line 66 to column 8, line 1. That is specifically saying here is algorithm structure. And look at that. The structure itself, that's not algorithm structure that corresponds to the function of reactivating a link to the first base station, right? It's just about step one, whether step one of the other site's proposed three-step algorithm is required. This relates to step one. Am I right or am I wrong? That's incorrect, Your Honor. The step one is not whether a rejection is necessary. The step – well, let me rephrase that. The step one is not that it has to receive a rejection. The step one is that it has to make a determination that the handover was unsuccessful. And it doesn't matter how it makes that determination. That's the point of what the board is quoting from here. They're specifically saying the mobile station has to determine that the handover was unsuccessful. That's the first step. And it can be due to a rejection, but it can be for other reasons as well. So what the board is specifically saying is we agree that there's an algorithm – if there is an algorithm. And I think in response to your question before, I don't know if the board was saying we're not so sure there's an algorithm. I think the board was saying we're not so sure that an arrangement is a means plus function limitation. But nonetheless, our job is to entertain the arguments that IPCOM raised in its request to reopen prosecution, and we'll respond to them. And that's exactly what it was doing. But they knock their arguments down. And in doing so – They knock their arguments down, and then they say this particular means limitation is obvious. Yes. Now, they can't say it's obvious without identifying some structure as obvious. They've got to identify some structure, and then they've got to read prior art against that structure. Of course. Now, I'm not very smart. I didn't see in here where the board was saying, ha-ha, they picked the wrong structure. Here's the right structure. They picked the wrong structure. And so even if their structure isn't taught by the prior art, we don't care. So here's the structure, but they never said what the structure was, and they didn't say what prior art read on it. Your Honor, they did say what the structure was, and then they did show where it was read. And let me show you – and it was implicit. It's indirect. But they did it, and let me explain how. The first step is right there at appendix page 16. If we agree with you. Sorry? If we agree with you that this – that they are – in the cases in which there's no receipt of a rejection, there is an algorithm. Because all they're saying is that what's shown at appendix page 16, referring to the specification, is that the first step is determining that the handover failed. The next step, which is much clearer, is at appendix page 17, at the end of the full paragraph in the middle. And it says, for example – this is getting to IPCOM's argument that you have to get a confirmation message. And they're saying the specification discloses algorithm structure in which, quote, if the search for a new base station is unsuccessful, the mobile station re-registers at its old base station and keeps its previous settings. That's the second step of the algorithm. And they say in this algorithm structure, there's no disclosure of a step in which a link is re-established by receiving a message. And what am I supposed to make of that sentence? What they're saying is, first they're showing what's not necessarily algorithm structure, and then they're saying what is. The sentence that you're reading says, even assuming the patent owner is correct, that it discloses an algorithm of re-establishing the link by getting a confirmation message, they're saying the specification also discloses algorithm structure where that's not required. And so right here is where the board is explaining this is what the arrangement for reactivating the link is. You figure out that your handover failed, and you re-register back with the first base station. All that matters is this is a mobile station claim for all of them that are at issue in this appeal. Let's assume for the moment that you have a debate that the board cobbled together a second so-called algorithm structure. Let's also assume for the moment, I'm a little skeptical, that they actually did the A plus B plus C formulation to create that algorithm structure, and it was really much more piecemeal. But there's still the fundamental problem that Judge Plevenger pointed out, which is that there's no comparison between any form of any so-called algorithm structure from the spec to Anderson, McDonald, or the tertiary references. So there's a problem here just on that fundamental level. Your Honor, I agree that there was no comparison of the proper construction of the two-step algorithm to GSM and to PACS, but that's because the board decided it didn't need to go there. What the board did was we filed, if you turn to appendix page 20 at the decision, it says, right after decision, we reversed the examiner's non-adoption of the rejection of claims 1, 5-17, 19-22, and 24 under 35 U.S.C. 103 as unpatentable over Anderson and McDonald. That's the part that's relevant here. So what the patent office is doing, and keep in mind, this is a decision, this is the second round at the board after first. Okay, you need to do a heck of a lot of translating here, so go ahead and translate that. What does that sentence mean to you? Thank you, Your Honor. We filed a petition in whatever year it was. It adopted all of your reasoning and rationale provided in your board brief with respect to why Anderson and or McDonald teaches the arrangement for reactivating the link? Your Honor, when we filed our petition for reexamination, we set forth in the petition, and that's at appendix page 339 and 334. We explained where in McDonald it showed the arrangement for reactivating. The examiner had adopted that rejection. The examiner then recanted, not on the arrangement for reactivating, but with regard to other steps, and then that got appealed. The issue about the arrangement for reactivating and whether it was sufficient was never argued by IPCOM. And so the board's original 2013 decision found that the one issue that the examiner had recounted on, the examiner was wrong, the rest of it stands. And so it was based upon our proposed rejection that we provided in our original petition. What happened then is that IPCOM sought to reopen prosecution for new evidence, and then they said there's additional steps. Is there a case you can point us to for this – I'll just call it elaborate theory for why we can go ahead and read the conclusion sentence at the end of a board opinion to encapsulate everything that happened in the prior seven years of the reexam? Well, I can't quote an opinion to Your Honor. So let's just assume that all we really want to go off of is the four corners of this board decision, and on the four corners of this board decision we see a Donaldson problem. Then in that sense, would you agree that we need to remand this section of the opinion back to the board so that it can actually do the Donaldson analysis? Well, Your Honor, I still believe that this opinion is – I'm asking a hypothetical. Well, if the court finds that the analysis wasn't done, then of course the court should remand. I certainly would agree with that, and the court shouldn't reverse. It should remand. But I don't think that a remand is necessary because this opinion is a reconsideration, and it wasn't the duty of the board to set forth a complete opinion. They only needed to raise the issues that were brought in front of them from IPCOM in their request to reopen prosecution and see if those carried water, and they found that they did not. IPCOM argued that – they never argued before that the arrangement for reactivating wasn't found in the combination of Anderson-McDonnell. They agreed on that. That was never appealed the first time. And so now they're saying there's additional steps that weren't considered before, and the board said no, all the additional steps that you're pointing to aren't required. It sounds a lot like the other side's argument about why you can't challenge Claims 31 to 37 because you didn't challenge Claims 31 to 37 in the first board decision. Your Honor, first, we did challenge Claims 31 through 37. Not on Section 103, according to your Notice of Appeal. Our Notice of Appeal could have been better, but our Notice of Appeal satisfied the requirements under 4761C, which says that you have to point out the claims. Now 4161D, which is what IPCOM points to, says that you're supposed to set – that the board is required to take up whatever grounds we propose. I guess the point I'm trying to make is as soon as the other side reopened prosecution and then amended the claims, it sort of hit the reset button on the debate. And so just as perhaps that would allow you to now address Claims 31 through 37, it also allows them to make arguments about the arrangement for reactivating the link to the first base station. Your Honor, my position would be – HTC's position would be that by reopening prosecution, it opens the door for each thing that they reopened. And that's why 31 through 37 come in because they actually stated in their request to reopen prosecution that although the Decision on Appeal references up to Claims 30, patent owner presumes that the board intended to reject all claims, namely – and then said 31 through 37. They said they presume that, and then they went ahead and amended the claims, Claim 34. So, of course, we had an opportunity to respond to that, and it made sense that the board then addressed Claims 31 through 37. But this other issue about the arrangement for reactivating, that was a done issue. That had been already adjudicated. The board didn't say that, though. The board reached the issue here. It didn't say, why is anyone talking to me about this new interpretation of the arrangement for reactivating the link? I'm not going to address it because the opportunity to have considered this was in the 2013 board decision. It wasn't raised then. I'm not going to allow it to be raised now. Instead, they reached the issue. It was argued to them. It was debated by both sides, and they reached the issue. Possibly defectively, but nevertheless, they reached it. Yes, certainly, Your Honor. They reached it, but the way they reached it was to look at all of the additional algorithmic steps that IBCOM was proposing and to see whether that would change the analysis. The analysis that already had not been challenged before, that Anderson and Buick and McDonald adequately taught the arrangement for reactivating. Did you argue to the board in the 2015 decision that the board was barred from considering this arrangement for reactivating the link? I don't believe so, Your Honor. But just to clarify what IBCOM had argued, we certainly did argue to the board that even under their proposed construction, Anderson and Buick and McDonald sufficiently taught, and furthermore, GSM and PACS were relevant as well. A third? Pardon me one second. I believe those are the only issues that were raised in the opening argument, so. Thank you. Okay, thank you. Listening carefully to the questions, I get the sense that the panel believes the four corners of the decision in accordance with administrative appeal case law does not contain the appropriate findings for this court to review, either in terms of the claim construction or application of the claim construction. And I acknowledge the weight of that case law says you should remand in those circumstances. I mean, we certainly acknowledge that. Your Honor educated me on that in the Nike Adidas appeal. But I would also submit, Your Honors, that the case has been pending seven years. There were, in our view, significant procedural irregularities. The record is fairly clear on this de novo legal issue about what the algorithm is. The court, should it remand, should try to undertake to provide guidance to the parties in the Patent Office on that algorithm. It's a claim construction issue, and that could hopefully shorten the proceedings if that's where you go. In the 2013 board decision, it's true that you could have argued this three-step algorithm about the arrangement for reactivating the link at that point in time, but didn't. Your Honor, the very first decision that we took up, we took up on the issue of holding in reserve. At the time, neither the district court, I think neither the district court, but certainly this court, I don't think had issued its decision in the HTC IPCOM case where we were fighting over whether the arrangement was a means plus function. Right, that decision came out in 2012. Yeah, it was around that time. The year before. Yeah, but I think by the time we filed all the appeal notices and whatnot, so we took it up on that limited issue, and just the first decision did not address the arrangement at all. It only focused on holding in reserve. Right. Thank you. Thank you. We'll thank both sides in the case that submitted.